# HEISE & BRUNS MILL AND LUMBER COMPANY,
## A Body Corporate,

*vs.*

# GEORGE C. GOLDMAN, DAVID M. NEWBOLD, and NEWBOLD & NEWBOLD & SONS, Incorporated.

*Agency vel non: question for jury.*

It is not for a Court to determine the question of agency *vel non,* but to determine whether there is any evidence tending to prove agency; and if there is any such proof, although not full and satisfactory, it is the exclusive province of the jury to judge its weight.                          p. 559

Whether there be any evidence or not is a question for the judge. Whether it is sufficient evidence is a question for the jury.                                            p. 559

Relations of principal and agent do not depend upon express appointment and acceptance, but may be implied from the words or conduct of the parties and circumstances.    p. 559

*Decided April 8th, 1915.*

Appeal from the Court of Common Pleas of Baltimore City.  (DOBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, URNER, STOCKBRIDGE, and CONSTABLE, JJ.

*J. Royal Tippett* (with whom was *Richard B. Tippett* on the brief), for the appellant.

*Arthur L. Jackson* (with whom was *David M. Newbold, Jr.,* on the brief), for the appellees.

CONSTABLE, J., delivered the opinion of the Court.

There is but one exception in this record, and that arises from the action of the Court below in granting a prayer at the conclusion of the plaintiff's testimony, directing a verdict for the defendants, upon the ground that there had been offered no evidence legally sufficient to entitle the plaintiff to recover.

The action was in assumpsit and upon the common counts, and was for the purpose of collecting an unpaid balance due the appellant for building materials.  The defendant, George C. Goldman, a building contractor, filed a special plea of discharge in bankruptcy, to which no replication having been filed, judgment by default whereof was entered for him.  It was admitted in open Court by the appellees that David M. Newbold and Newbold & Sons, Inc., were, for the purposes of the case, to be considered identical.

The appellant produced George C. Goldman, who testified that in the spring of 1909 he entered into a verbal agreement with David M. Newbold to build, on land belonging to Mr. Newbold in West Baltimore, several houses.  By

this agreement the title to the houses was to be transferred to Goldman, subject to a ground rent of thirty-six dollars per house for some of the houses and sixty dollars as to others; he was also to receive a bonus of three hundred dollars per house on some of the houses and four hundred per house on others. Mr. Newbold was also to loan him five hundred dollars per house on some of the houses and five hundred dollars per house on the others, if he should need it. After having made the agreement he asked for bids from the material men, representing that the properties were to be in his name, subject to ground rents. That before the appellant entered into a contract with him for materials the president of the appellant corporation had Mr. Newbold sign a paper guaranteeing the payment of its account to the extent of 50% on the first lot of houses to be built and 66⅔% on the second lot. The guarantee was as follows:

"Baltimore, April 6th, 1909.

"Mess. Heise & Bruns Company.

"Gentlemen: In consideration of your furnishing material, lumber and millwork to Mr. George C. Goldman for houses to be erected by him at Hollins and Smallwood Streets, I agree to guarantee said material, lumber and millwork as furnished for said buildings at prices agreed with George C. Goldman as follows: Each month's account to be closed by note or notes at four months, without interest, when said note or notes mature I have the option of renewal at four months with interest. If Goldman does not pay them I will *to the extent of fifty per cent., no more, my liability to be limited to the extent of fifty per cent. and no more.*

D. M. Newbold.

"N. B.—The part of the above paper which is underscored appears in the handwriting of Mr. D. M. Newbold."

The paper guaranteeing 66⅔% is to the same effect as the above.

The bonus on each of the houses was paid by Mr. New-
bold. The amounts under the 50% and 66⅔% guarantees.
were also paid by Mr. Newbold and charged against the
amounts agreed to be loaned by him on the houses. So that
at the time the suit was brought there was nothing due from
Mr. Newbold to Mr. Goldman under the agreement between
them; nor anything due the appellant by Mr. Newbold by
reason of his guarantees. The bonus money was used by
Mr. Goldman to pay off his weekly pay roll, including twenty-
five dollars per week for himself. The loan money was.
used to pay the material men, sometimes directly paid by
Goldman, at others by Newbold.

It was proved that leases for all the properties were made
by Newbold & Sons, Inc., to George M. Maisel, a clerk in
the office of Mr. Newbold, by four separate leases, the first
dated July 9th, 1909, and the last June 20th, 1910. That
none of this property was ever conveyed to George C. Gold-
man. Mr. Goldman testified that he first learned of the
first lease by reading of it in the papers, and went to Mr.
Newbold, telling him that since he had bought all the mate-
rial the property should be in his name. Mr. Newbold re-
plied to this: "It is all right as it stands." Under cross-
examination, the witness testified that he understood this
lease was simply formal, and never objected to the subse-
quent ones.

A large number of the houses were sold, the negotiations
for the sales in some instances being carried on by Mr. Gold-
man and in others by Mr. Newbold. Several houses were.
taken by different material men in settlement of their ac-
counts. The money received from the sales was credited
on the account of Mr. Goldman. In February, 1912, a vol-
untary petition in bankruptcy was filed by Mr. Goldman,
and in the list of unsecured creditors was the appellant for
the amount due on a promissory note; and among the sched-
ule of assets his interest in sixteen of the houses built under
the agreement in this case, being all of those unsold at that.
time.

John F. Bruns, president of the appellant corporation, testified that after Mr. Goldman had interviewed him as to furnishing materials for the construction of the houses, he visited Mr. Newbold for the purpose of having him guarantee the payment of the whole account, having with him a prepared paper to that effect. Mr. Newbold refused to guarantee the whole account, but limited his liability to the extent of 50% on the first transaction and subsequently 66⅔% on the second transaction. This guarantee was satisfactory to Mr. Bruns, for he thought the leases were to be in the name of Mr. Goldman, and that fact would furnish ample protection to him for any amount not covered by the guarantee. Near the time of the completion of the second lot of houses, he learned from Goldman that the leases were in the name of Mr. Maisel, and went to Mr. Newbold and complained of the leases not being in the name of Goldman, and was told by Mr. Newbold that whenever a house was sold he would get the *pro rata* of his bill. At this time he refused to furnish any more material, unless Mr. Newbold paid the whole amount of the subsequent bills. This was agreed to and carried out by Newbold. Mr. Newbold asked that he take houses for his claim, but this he refused to do, although he did arrange with one of his employees for the purchase of one, and the proceeds were credited to Goldman's account. He also testified that Goldman had frequently dealt with his firm, and, at the time of this contract, was largely indebted to it. He also testified that the credit for this contract was extended to Goldman, and the account carried on the books in Goldman's name.

The only other witness was Herbert E. Keys, who testified that from April, 1910, to January, 1911, he was the agent on the property. Mr. Goldman took him out to the property, but Mr. Newbold paid him, so he thought he was working for Mr. Newbold. So long as Mr. Goldman was on the work he brought him his money every week when the workmen were paid off. Later he got his money at Mr. New-

bold's office. He testified he sold six of the houses and got deposits on them. Some he turned over to Mr. Goldman and the others to Mr. Newbold. In the same way he collected and paid over rents. Mr. Newbold told him, after he had paid over forfeits to Mr. Goldman, that he should not turn over any more to Mr. Goldman, for Goldman did not have anything to do with the houses, but they belonged to him. He also told him Goldman had no interest in the houses.

The theory of the appellant is that the appellee is properly chargeable with these materials, on the ground that there is evidence from which the jury could find that Goldman was but the agent of Newbold, and that Newbold used him as a sham or straw man so as to escape liability on the contract made by him with the appellant. It is the undoubted rule of law of this State, and practically universal, that it is not for the Court to determine the question of agency *vel non,* but to determine whether there is any evidence tending to prove the agency, and if there is any such proof, although not full and satisfactory, it is the exclusive province of the jury to judge of its weight. "Whether there be any evidence or not is a question for the judge; whether it is sufficient evidence is a question for the jury." *Nat. Mech. Bank* v. *Nat. Bank,* 36 Md. 5; *York Co. Bank* v. *Stein,* 24 Md. 447; *Morrison* v. *Whiteside,* 17 Md. 452; *Henderson* v. *Mayhew,* 2 Gill, 393.

The relation of principal and agent does not depend upon an express appointment and acceptance thereof, but it may be implied from the words and conduct of the parties and the circumstances. *Rosenstock* v. *Tormey,* 32 Md. 169, 31 Cyc. 1217. In view of these principles it was the duty of the Court below, in considering the prayer, to assume the truth of the evidence of the plaintiff and determine whether there was any proof from which the jury could infer the relationship between Goldman and Newbold.

That the Court below determined this question correctly we have no doubt.

The testimony of Goldman clearly establishes his understanding of the relationship that was to exist between himself and Newbold. It does not import any idea that he was contracting for materials as the agent of Mr. Newbold. In fact, he distinctly represented to the appellant that he was not buying except on his own responsibility and for his own account. His true understanding is fortified by his acts when he was seeking relief in bankruptcy proceedings, as shown by the records of the U. S. Court, in that he admitted individual liability on the contract here sued on, and claimed an interest as owner in the properties in question. If the appellee did not carry out the terms of the agreement between them as to the title of the properties being placed in Goldman, Goldman could, no doubt, have had redress, but by his own testimony he showed it was not material to his interest where the title stood. As fast as the houses could be sold the conveyances were made and his account credited. The fact that the transfer was not made before the houses were completed could not operate to change their relationship into that of principal and agent—a relationship which, according to Goldman, was not at any time in contemplation. While it is true that the relationship will not be inferred from the fact that third persons thought it existed, it is, nevertheless, significant that the appellant did not consider the appellee as the principal. And this is so much the stronger, when we recall that the representative of the appellant requested from the appellee a guarantee of the whole account, and was satisfied with a partial one; and this for the reason that he was satisfied that Goldman was operating upon his own account. Of course we are not overlooking the principles applying to one dealing as if for himself, but in reality for an undisclosed principal. So long as he thought the title was in Goldman he regarded Goldman as the one liable to him, but when he discovered otherwise, he then attempted to make Newbold liable not only for the portion which he had expressly limited his liability to, but for the whole account, on

the theory that Goldman was his agent, with authority to bind him. The fact that the appellant refused after his discovery of the lease to furnish any more materials until the appellee agreed to pay for them, lends no force to the position of the appellant, for by then the appellee had a large amount tied up in the operation and it was necessary for him to have it completed in order to reimburse himself. Also the fact that the appellee told Keys, the agent on the ground, that the properties belonged to him and not to pay any money derived from the properties to Goldman, does not show anything more than that he regarded the properties his until he and Goldman had settled their accounts.

The appellant has cited and relies for its position upon four cases—one a Maryland case and three from other jurisdictions. The Maryland case is *Swindell* v. *Gilbert,* 100 Md. 399. There the recovery was based upon the theory that the architect, supervising the erection of a building, was the agent of the owners, and there being evidence that he had expressly stated to the material men that the owners would pay if the contractor did not, and the material men taking orders on that condition, it was held that the evidence was properly submitted to the jury to find whether he was the authorized agent of the owners. In the opinion, this Court, in dealing with the question of whether the contractor, who actually gave the orders, was actually purchasing the material on his own account, or was simply giving orders for the owners, said: "Here was evidence tending to show that Flaggs (the contractor) was a nonentity in the business, was ignored in the purchasing of the material and in the payments made therefor; and also in the changes of the amounts of material, and the whole matter apparently left in charge of the appellants or their agent. And if the jury believed this, they might have found that Flaggs was in fact only a figurehead." And the Court goes on to say, that if the jury found the contractor to be only a sham and that not he, but the architect, made the contract and conducted all the deal-

irigs, and the owners accepted the benefit of his acts and made payments according to the architect's arrangements, with knowledge thereof, that from these facts, unexplained or uncontradicted, the jury could have found the agency of the architect. How different from the facts of the present case. There is no evidence whatever in the matter of the contract of Goldman with the appellant that he was ignored or overridden in the least. He was the only person the appellant consulted or looked to except as to the guarantee. He was not treated as a figurehead in the sale of the houses, for on every sale his account was credited with the purchase money.

. The other cases cited need not be particularly referred to, as they are authorities emphasizing the principle, heretofore referred to, that agency can be implied from the circumstances and the acts of the parties, and that the Court is to only pass upon whether there is any evidence tending to show agency and the jury to determine the weight to be given the evidence, and are totally different from the facts of this case.

Being of the opinion that there was no evidence tending to show an agency, we will, therefore, affirm the judgment.

*Judgment affirmed, with costs to the appellees.*