## CLAIBORNE v. BROPHY.

### (Circuit Court of Appeals, Fourth Circuit. May 12, 1916.)

### No. 1414.

1. BROKERS ⊕57(2)—RIGHT TO COMMISSION—SUFFICIENCY OF SERVICES.
   While the mere fact that a broker authorized to sell property introduces or otherwise brings together the owner and one who becomes the purchaser does not entitle him to compensation, it will do so if such bringing together is the procuring cause of the sale, although the owner takes the negotiations into his own hands and accepts a lower price.
   [Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 66, 67, 72; Dec. Dig. ⊕57(2).]

2. BROKERS ⊕88(2, 3)—ACTIONS FOR COMPENSATION—QUESTIONS FOR JURY.
   In an action by a broker to recover a commission on the sale of the stock of a coal-mining company, evidence that defendant, who employed

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

him, was substantially the owner of the stock, and that defendant personally made the sale to one who was an officer of a corporation with which plaintiff had been negotiating, of which fact he had advised defendant, *held* sufficient to require the submission of the case to the jury.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 128, 129; Dec. Dig. ⊛88(2, 3).]

In Error to the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Action at law by Herbert W. Claiborne against John S. Brophy. Judgment for defendant, and plaintiff brings error. Reversed.

Willis B. Smith, of Richmond, Va. (Bartlett, Poe, Claggett & Bland, of Baltimore, Md., on the brief), for plaintiff in error. ·

Robert R. Carman, of Baltimore, Md. (J. Walter Lord, of Baltimore, Md., on the brief), for defendant in error.

Before PRITCHARD and WOODS, Circuit Judges, and BOYD, District Judge.

PRITCHARD, Circuit Judge. This suit was instituted in the District Court of the United States for the District of Maryland. The plaintiff in error (plaintiff below) sued the defendant in error (defendant below) upon the common counts and upon a special count. Under the special count he claimed $8,250, 5 per cent. commission on $165,000, the price paid for the capital stock of the Cirrus Coal & Coke Company in the sale of which the plaintiff claimed that he was the procuring cause.

The testimony in the case consists mainly of letters. It appears that the plaintiff at the time of the transaction in question resided in Richmond, Va., was engaged in the real estate business, and made a specialty of coal, timber, and iron properties. In June, 1911, he received a letter from the defendant, who was at that time president of the Cirrus Coal & Coke Company, calling his attention to the fact that the Cirrus Coal & Coke Company was for sale, and offering him a commission of 5 per cent. if he should find a purchaser. In the letter it was distinctly stated that the property had not yet been offered for sale and that a one-half interest in the same could be purchased for $135,000, and that the entire stock could be acquired for $275,000. On August 14, 1911, in response to an inquiry from the plaintiff, the offer was renewed in the following language:

"The price of the property will be $275,000, out of which we can allow you a 5 per cent. commission. The terms of sale would be one-half cash, the balance in equal payments running one, two, or three years at 6 per cent. interest. The property has been offered to others; hence this price is subject to prior sale."

This letter was signed by the defendant as general manager for the receiver of the Cirrus Coal & Coke Company; the company in the meantime having been placed in the hands of a receiver. On February 29, 1912, the offer was renewed in the following language:

"Have received your favor of the 28th inst. stating that you have several parties interested in the purchase of Cirrus Coal & Coke Company property

and wish to know if the price of $275,000 is the minimum, and in reply will say that it is. We will allow you a 5 per cent. commission if you consummate a sale at this price."

Under date of March 14, 1912, the plaintiff notified the defendant that L. E. Tierney, secretary-treasurer and general manager of the Elkridge Coal & Coke Company, had written him that he had sent his engineer to inspect the Cirrus Coal & Coke Company, and that he had submitted all data in his possession to Mr. Tierney and had interested him in the coal property, and that he hoped that he would have favorable advice from him in a few days with reference to the purchase of the property. On the 15th of March, 1912, this letter was acknowledged from the defendant's office, and in the acknowledgment it was stated that the defendant was absent from the office, but that he was expected to return home the next day, at which time the plaintiff's letter of March 14th would be referred to him.

On April 13, 1912, the plaintiff was notified by the defendant that the property had been sold and that the new owner had taken charge on the 1st of April. On April 15, 1912, the plaintiff wrote the defendant asking for the name of the purchaser, whether a corporation or private individual, and on the 20th of April, a reply was received stating that the purchaser was Mr. Isaac T. Mann and that he was at that time operating the property. It appears that Mr. Isaac T. Mann was the president of the Elkridge Coal & Coke Company, of which Mr. Tierney was secretary-treasurer and general manager, and was also president of the corporation called Pocahontas Consolidated Collieries Company, Incorporated. The testimony shows that the plaintiff brought the Cirrus Coal & Coke Company property to the attention of both of the above-mentioned corporations, of which Mr. Mann was president.

It also appears from the testimony of Mr. Mann that at the time he purchased the entire capital stock and bonds of the Cirrus Coal & Coke Company, on March 25th, for $165,000, he intended to offer the stock and bonds to the Pocahontas Consolidated Collieries Company, Incorporated, at the price for which he had acquired them, and that he subsequently carried out his intention, and that his offer was accepted by the Pocahontas Consolidated Collieries Company, Incorporated, on April 24, 1912, and the stock and bonds were transferred to it for the amount of the original purchase, to wit, $165,000. The plaintiff made demands upon the defendant for his commission on the sale, and, the same being denied, he instituted this suit. After hearing the testimony, the court below held that there was not sufficient legal evidence to entitle the plaintiff to recover, and directed a verdict in favor of the defendant.

[1] We deem it important to consider briefly the law bearing upon the question as to whether under the circumstances of this case the plaintiff would be entitled to recover in the event he should establish the facts as alleged in his complaint by a preponderance of the evidence. In the case of Howard v. Street, 125 Md. 299, 93 Atl. 926, the court quoted with approval the following language from Keener v. Harrod, 2 Md. 63, 56 Am. Dec. 706:

"We understand the rule to be this (in the absence of proof of usage): That the mere fact of the agent having introduced the purchaser to the seller, or disclosed names by which they came together to treat, will not entitle him to compensation; but if it appears that such introduction or disclosure was the foundation on which the negotiation was begun and conducted, and the sale made, the parties cannot afterwards, by agreement between themselves, withdraw the matter from the agent's hands, so as to deprive him of his commission."

In referring to the case of Livezy v. Miller, 61 Md. 336, the court quotes with approval the following:

" 'It is well settled with the authorities generally, and in this state, that a broker is entitled to his commissions if the sale effected can be referred to his instrumentality. * * * If the agent is the procuring cause of the sale made, he will be awarded his commissions.' * * * The fact that the appellant took the negotiations into his own hands, and changed the terms, could not affect the agent's right to commissions, provided he was the procuring cause of the sale."

The case of Lincoln v. McClatchie, 36 Conn. 136, is very much in point. In that case it was shown that the defendant had placed in the hands of the plaintiff, a real estate broker, for sale a house. Among other things, it was stipulated that the house should be sold for the sum of $6,500, out of which plaintiff was to receive 1 per cent. commission for his services. It was also agreed that in the event the defendant sold the house himself that he would not be liable to plaintiff for commissions, and that the plaintiff was not to advertise the house. It further appears that plaintiff, subsequent to that date, advertised that he had houses for sale on a street in the vicinity where defendant's house was located. A party residing on such street, being anxious to find a house near by for a friend, saw the advertisement, and in an interview with the plaintiff was informed that defendant's house was for sale. The party receiving such information informed his friend that the property in question was for sale, and he entered into negotiations with the defendant for the house, which resulted in the purchase of the same for the sum of $6,400. It further appeared that the purchaser was not known to the plaintiff at all, and the action of the party who gave the purchaser the information was wholly voluntary. The court in that case held that the plaintiff was entitled to recover. Anderson v. Cox, 16 Neb. 10, 20 N. W. 10, is to the same effect.

[2] In view of what we have said, did the court below err in holding that the plaintiff had not offered sufficient legal evidence to justify the jury in finding that he was the procuring cause of the sale by the defendant of the Cirrus Coal & Coke Company to Isaac T. Mann? The plaintiff insists that the evidence offered in the court below, while conflicting, was such as to warrant the jury in finding a verdict in his favor, and he therefore invokes the rule that where the evidence is such that fair-minded men may reasonably differ as to the inference to be drawn therefrom that it is solely within the province of the jury to determine the issue thus raised.

In the case at bar it is insisted by defendant that the stock was purchased by an individual whom the plaintiff had never seen or talked to, nor to whose attention the property had never been brought by

him. Usually in suits of this character the name of the purchaser is disclosed to the broker, or he has been brought to the purchaser directly. It appears that in this instance neither the name of Isaac T. Mann nor the Pocahontas Consolidated Collieries Company, Incorporated, were disclosed to the owner by the plaintiff; it further appearing, as we have already stated, that the plaintiff did not know Isaac T. Mann, nor had he had any correspondence with him.

However, it does appear that the plaintiff had had correspondence with the Pocahontas Consolidated Collieries Company, Incorporated, and L. E. Tierney, secretary-treasurer and general manager, and that he had brought to the attention of these parties the property which was afterwards sold; that he had actually notified the defendant that Tierney not only knew about the property, but had sent an engineer to inspect it. It further appears that the defendant was notified by plaintiff in a letter dated March 14th that Tierney, with whom he had been corresponding in regard to this particular property had, as we have stated, sent an engineer to inspect it. In this connection it should be remembered that Isaac T. Mann was president of the Elkridge Coal & Coke Company, and also the president of the Pocahontas Consolidated Collieries Company, Incorporated. It further appears that on the 20th day of March, 1912, a note for $50,000 of the Cirrus Coal & Coke Company, indorsed by Smith and McKee and the defendant and his brother, became due, which resulted in financial embarrassment to the defendant, owing to the fact that the note was secured by a deposit of $100,000 of the bonds of the Cirrus Coal & Coke Company, the bank which held this note having ordered the collateral to be sold. At the sale these bonds were purchased by a third party, from whom they were afterwards purchased by the defendant for $59,000. It appears that at that time, in order to meet an emergency which confronted the defendant, he went to Isaac T. Mann for the purpose of inducing him to purchase the Cirrus Coal & Coke Company, which was owned and controlled by the defendant and his brother.

It is insisted by the plaintiff that the defendant went to Mann, because he knew that he was president of the Elkridge Coal & Coke Company, and, further, because he had been informed on the 17th day of April by the plaintiff that the Elkridge Coal & Coke Company contemplated the purchase of the Cirrus Coal & Coke Company, insisting, among other things, in corroboration of the statement that it desired to purchase this property and that it had sent an engineer to make a thorough inspection and report. It further appears that the sale of this property was made on March 23d as a result of the negotiations between Mann and the defendant. It also appears that this sale was made only six days after the defendant had received this information from the plaintiff. The plaintiff insists that the fact that Mann was president of both the Pocohantas Consolidated Collieries Company, Incorporated, and the Elkridge Coal & Coke Company, raises the question as to whether the defendant went to Isaac T. Mann on the 23d of March because of this information, and if the jury should infer from the circumstances as shown by the evidence

that such was the case it would be warranted in finding that the plaintiff was the procuring cause of the sale.

In this connection it is insisted by defendant that he did not know that Mann was president of either of the companies. On the other hand, it is urged by the plaintiff that this statement is not conclusive, inasmuch as the jury, under the circumstances, might find against the defendant on this point. It is further insisted by plaintiff that the fact that Mann and the defendant were engaged in the same business and were on intimate terms should have been submitted to the jury as tending to sustain the contention of the plaintiff, even if, as a matter of fact, Mann had no knowledge of the services that plaintiff had rendered in attempting to sell this property, the vital question being as to whether the defendant had knowledge of the efforts of plaintiff. It is well settled that where one who has employed another to secure a purchaser for his property he cannot avail himself of the services of the agent and make the sale of the property by virtue of the information that he has received from the agent and thereby deprive the agent of his commissions.

It is insisted by defendant that, inasmuch as this property was sold for a less sum than the price named to the plaintiff, the plaintiff is thereby barred from recovering anything for his services. The fact that this property was sold for a less sum than the amount named to the plaintiff cannot affect the plaintiff's right to recover. One who has employed an agent to sell his property at a fixed sum, and on account of financial stress or otherwise takes the matter into his own hands and sells the property at a less price, cannot thereby avoid the obligation he is under to pay plaintiff a commission. Howard v. Street, supra.

However, it is insisted by defendant that inasmuch as it appears by the pleadings that plaintiff was employed by defendant, and the testimony only tends to prove that the contract of employment was between plaintiff and the Cirrus Coal & Coke Company, he would not be entitled to recover. On the other hand, it is insisted by plaintiff that this contention is without merit; that while the letter of June 11, 1911, was signed by the Cirrus Coal & Coke Company, J. S. Brophy, the letters of August 14, February 29, 1912, and March 15, 1912, were signed by J. S. Brophy, general manager for the receivers; that the contract of employment was for the sale of the capital stock of the corporation, which was owned substantially by the defendant; and that therefore it was in fact the defendant who employed plaintiff, and that it was he who accepted plaintiff's labors, and who is therefore liable to plaintiff for the value of his services as set forth in the three counts for work and labor and for money paid and for money received. It is also insisted by plaintiff that the defendant was in reality the corporation, and that this is shown by the testimony to the effect that the receiver knew nothing of the sale, and that at the time of the sale no application had been made to the court for authority to make the same.

However, we think the court below erred in refusing to submit to the jury the evidence offered by the plaintiff which tended to show

that plaintiff was entitled to recover from defendant for such services as he may have rendered as the procuring cause of the sale of this property.

For the reasons stated, the judgment of the court below is reversed, and the cause remanded, with instructions to proceed in accordance with the views herein expressed.

Reversed.