## HARDESTY v. MARTIN EBERSBACH CO. et al.

(Circuit Court of Appeals, Sixth Circuit.   December 4, 1923.)

No. 3833.

**1. Vendor and purchaser ⬅︎3(3)—Distinction between "brokerage or agency contract" and "option contract" stated.**

Under a contract of brokerage or agency for the sale of land, compensation may be earned in many ways, sometimes even by mere introductions, but in a contract of option there must be performance or offer to perform conditions precedent.

**2. Vendor and purchaser ⬅︎349—Commission for obtaining abnormally large price held not earned, where owner sold at much smaller price.**

A broker, who obtained an option on coal properties for $2,500,000 under an agreement for compensation of $250,000 out of the stated price if and when received, *held* not entitled to the commission merely by pleading the option, without alleging that he had procured a purchaser, or the value of services, etc., when owner thereafter sold the properties by direct negotiations for $1,850,000, for the promise of an abnormally large commission, for getting an abnormally large price does not imply a promise to pay the same amount, or even rate, of commission for getting a much smaller price.

**3. Brokers ⬅︎8(3)—Finding that broker entitled to everything over minimum fixed price would have been warranted.**

Where a broker obtained an option on coal properties for $2,500,000, with an agreement for compensation of $250,000 when and if received, subject to similar options to others, but owner thereafter sold the properties by direct negotiations for $1,850,000, a finding that the agreement in effect promised to pay as commission everything obtained over the fixed minimum price would have been warranted.

**4. Brokers ⬅︎57(2)—Owner selling to broker's customer at price less than broker's held liable for value of broker's services.**

Where owner contracts to pay a broker as commission everything obtained over a fixed minimum price, the condition that the sale must be at that price is for owner's benefit, and he waives it by selling the property himself to broker's customer at a lower price, and he is liable for the value of broker's services.

**5. Vendor and purchaser ⬅︎18(4)—Owners' reservation of right to sell under similar options did not reserve right to sell at lower price.**

Where owners gave broker an option on coal lands for a stipulated price, reserving the right to sell under existing similar options, they reserved only the right to sell at that price, and proof that they sold to the customer of another broker at a much lower price was not a sale under the option within the reservation, so as to bar claims for commission.

**6. Pleading ⬅︎237(3)—Denial of motion to amend petition held not abuse of discretion.**

In an action by a broker for commission under an option contract, a denial of a motion to amend the petition to allege fraud and interference to meet the proofs, after the judge announced that a verdict for defendants must be directed, was not an abuse of discretion, where plaintiffs should have asked an amendment to show an agency contract, services rendered and their value, which would have required further proof, especially as plaintiff's cause of action in a new action would be different than the one adjudicated.

⬅︎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. **Brokers** 🔑**86(4)—Agent who first approaches prospective purchaser not necessarily entitled to commission.**

Where property to be sold is large, and probable purchasers few, the mere fact that one of several agents first approaches the person who later purchases it does not necessarily establish that such agent's efforts were substantially effective, so as to entitle him to commission.

In Error to the District Court of the United States for the Eastern Division of the Southern District of Ohio; John E. Sater, Judge.

Action at law by Oliver F. Hardesty against the Martin Ebersbach Company and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Frank M. Raymund and David F. Pugh, both of Columbus, Ohio (Pugh & Pugh, of Columbus, Ohio, on the brief), for plaintiff in error.

Wm. R. Pomerene, of Columbus, Ohio (Booth, Keating, Pomerene & Boulger, of Columbus, Ohio, on the brief), for defendants in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. The defendants below (defendants in error here), owners and operators of large coal properties in the Hocking Valley field, desired to sell. Their asking price was $2,250,000. Plaintiff, a real estate dealer, hoped to make a sale. He took from them a formal and complete option at the price of $2,500,000 and a letter promising to pay him $250,000 out of the stated selling price, if and when received. Defendants later sold the property by direct negotiation for $1,850,000. Plaintiff brought this action to recover the conditionally promised $250,000. Upon the trial defendants moved for a directed verdict—first, because there was no evidence to show that plaintiff procured the customer; and, second, because the condition which was the basis of the promise sued upon had not been performed. The court overruled the first ground of the motion, but sustained the second.

[1] Contracts made under these circumstances by real estate dealers with owners may be of several types, among which are: (a) Contracts of brokerage or agency employment, which enable the agent broker to earn compensation; (b) contracts of option, which afford the dealer a chance to speculate and make a profit. A given contract may be difficult to classify as between these two; but the distinctions in principle are clear. Under contract (a) compensation may be earned in many ways, sometimes even by mere introductions; under contract (b) there must be performance of, or offer to perform, the conditions precedent. These conclusions seem elementary; careful examination of all the cases cited by plaintiff shows nothing inconsistent with them.

[2] Plaintiff by his petition has saved us the trouble of this classification. He counts upon the option, and demands judgment for the sum of $250,000, which was to be paid him when he secured a purchaser who paid $2,500,000. He does not allege that he procured such a purchaser, or that he would or could have done so. He does not allege the value of his services, or that they were of any value. His pleading theory is that, because he had the option, and because the

owner sold out from under him, and without alleging or proving more, he is entitled to the sum which he would have received, if he had made the sale at the fixed price. This does not follow. If an abnormally big commission, either in gross or in rate, is promised for getting an abnormally big price, there is no implication of a promise to pay the same amount, or even rate, of commission for getting a much smaller price. Neither party to such contract would naturally have that intent. Plaintiff stated and proved a case of the type of Holton v. Job Iron & Steel Co. (C. C. A. 6) 204 Fed. 947, 123 C. C. A. 269, and was not entitled to recover the judgment demanded.

[3, 4] The case might be left here; but the plaintiff assigns error upon the court's refusal to let him amend his petition "to meet the proofs," and this requires or justifies the consideration now of some further questions. If plaintiff had sued, alleging an agency employment, and asking the reasonable value of his services in procuring a purchaser, would these proofs tend to show the existence of such a contract? We think they would. There is the form of an absolute condition, but the independent promise to pay plaintiff out of the price named tends to impeach the condition; the provision that the first holder of this or similar options who finds a purchaser shall be "considered the successful salesman," has the same tendency; and the whole transaction has at least color of an employment to sell on commission, accompanied by special conditions and limitations. A jury might conclude that it was practically a promise to pay as commission everything obtained over the fixed net minimum price. On such a contract the condition that the sale must be at that price is for the benefit of the owner, he waives it by selling the property himself at a less price to the agent's customer, and he is liable for the value of the services which he thus appropriates. Gross on Real Estate Brokers, § 135; Claiborne v. Brophy (C. C. A. 4) 44, 236 Fed. 190, 195, 196, 149 C. C. A. 380; Keys v. Johnson, 68 Pa. 42, 43.

[5] If such a right of action would otherwise accrue to plaintiff here, it would not necessarily be defeated by the mere fact—if proved—that the sale was made to a customer of Kuhns, the holder of a prior option, which we may assume, without deciding, had been duly continued in force. Plaintiff's option, in an early paragraph, was expressly declared exclusive, but later was in effect made subject to "similar options" which have been "granted to others," and the first option holder bringing a purchaser was to be "considered the successful salesman." Kuhns already had a generally similar option, providing for the same minimum net price of $2,250,000, and the sale was finally made to a purchaser whom Kuhns seemed to bring in. This sale, for $1,850,000, cannot be considered as one made under the Kuhns option in the sense necessary to create the bar contemplated by the contract. When the owner, giving an option for $2,250,000, reserves the right to sell under an existing similar option, that means the right to sell at that price, and the reservation cannot reach a sale at 20 per cent. less. Hence there is, as against plaintiff, no effective connection between Kuhns' option and the final sale. Kuhns' agency efforts have only the same force to defeat plaintiff's claims as if there had been no prior Kuhns' option.

[6] After the judge had announced that a verdict for defendant must be directed, plaintiff asked leave to amend the petition to allege fraud and interference, "to meet the proofs." Such a motion as this purported to be will usually be granted on proper conditions; but the petition here already alleged interference, and there was no need to amend to meet the proofs. Plaintiff should have asked an amendment to show an agency contract, services rendered, and their value, and to ask judgment accordingly. Further proof would have been necessary. There was no abuse of discretion in denying the motion which was made.

We have the less hesitation at this result because it is not very important to plaintiff whether he gets such an amendment in this action or begins a new one. Such a new suit would be for a cause of action different from that here determined.

[7] Defendants insists that there was no evidence tending to show that plaintiff procured, or even interested, the customer who finally purchased. We do not decide this question. The situation is the not uncommon one, where the property is large, and probable purchasers are few, and likely to be thought of as purchasers by two or more of the several agents who may be at the same time trying to sell, and hence likely to be more or less casually reached by circulars or advertising from different agents at about the same time. The first one to circularize such a field cannot thereby monopolize it. The question of fact, whether plaintiff had a substantial part in bringing about the sale, must be viewed against such a background, and the mere fact that plaintiff might be the first to bring the property to the attention of the one who later purchased would not necessarily establish that plaintiff's efforts were substantially effective. We have grave doubts whether this record shows substantial basis for finding the necessary causal relation; but, if this question of fact is presented upon another trial, the record might vary from the present record so far as to make any present discussion not helpful.

The judgment is affirmed.

DONAHUE, Circuit Judge, concurs in the judgment of affirmance.