HESLOP ET UX. *v.* DIEUDONNE

[No. 71, October Term, 1955.]

202

*Decided February 20, 1956.*

The cause was argued before BRUNE, C. J., and DELA-
PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Theodore L. Miazga,* with whom were *Miazga & Miazga*
on the brief, for the appellants.

*David Macdonald* for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal by the sellers of real estate from a
judgment in favor of a real estate broker for commissions
on the sale. The appellants, Theodore A. Heslop and
Edna G. Heslop, his wife, owned a residence in Silver
Spring, Maryland. In April, 1954, Theodore A. Heslop
gave an exclusive listing of the property for sale to
Ripley & Romer, Inc., a member of the Montgomery
County Real Estate Board, at a price of $19,950. The
appellee, being a broker and a member of that Board,
was notified of the listing. After the exclusive listing
had expired he got in touch with the appellants and ob-
tained permission from one or both of them to show the
house, and agents of the appellee did show it on different
occasions over a period of about two months to several
prospective purchasers. The highest price offered by
any of them was $18,000, but this offer was refused by
the appellants. The appellants then advised the appellee

that the lowest price which they would accept would be $18,000 net to them.

Shortly thereafter a Mrs. Jones, one of the eventual buyers, who wanted to buy a house, got in touch with Mr. Kendrick, one of the appellee's sales agents about the Heslop house. Mrs. Jones says that she got in touch with the appellee's office as a result of a newspaper advertisement; Mr. Kendrick says that he telephoned her. In either event, action initiated by the appellee's office would seem to have first caused Mrs. Jones to become interested in this property. Mr. Kendrick informed the appellants that he had a prospective buyer, and asked permission to show the property to Mrs. Jones. Permission was given and Mrs. Jones was first shown the property by Mr. Kendrick on August 14, 1954. At this time the price was understood to be $18,900. The following day Mr. and Mrs. Jones, in the company of their daughter and a friend and the appellee's agent, revisited the property and from there went to the office of the appellee to discuss possible terms on which the property could be bought. Mr. Jones testified that he made an offer of $18,750 while in the office, but that the appellee's agent, Mr. Kendrick, refused to submit the offer. Mr. Kendrick denied that such an offer was made and the trial court accepted his account of the discussion. Several days later Mr. Kendrick telephoned Mrs. Jones, and she had "lost interest." However, it later developed that not long after the last showing of the property by the appellee's agent, and on one or more other occasions, Mrs. or Mr. Jones, or both of them, without notifying the appellee, visited the property and had conferences with the appellants, one of which conferences took place on October 17, 1954. There was testimony that neither the Joneses nor the appellants were sure whether or not any commission would be payable to the appellee, and that in their conversation on October 17, 1954, Mr. Heslop stated that he would consult his lawyer to find out, and that Mrs. Jones said that if a commission was payable the Joneses would pay half of it. Finally, on October

18, 1954, Mr. and Mrs. Jones signed a contract with the appellants to purchase the property for $18,300.

The appellee later learned that his prospects had purchased the property and brought this suit at law in the Circuit Court for Montgomery County to recover his commissions. Judge Anderson, sitting without a jury, found that the appellee was employed by appellants as a broker and that he was the procuring cause of the sale. He found that the appellee was entitled to a commission of $915.00, which is 5% of $18,300, and gave a judgment for that amount. This appeal is from that judgment.

The appellants have raised what may be treated as four questions on this appeal.

The first question (which the appellants divide into three parts) concerns evidence regarding an exclusive listing contract which was admitted over their objection. No recovery is sought under this agreement. It merely showed that the appellee was informed that the property was on the market and how he was informed of that fact. This exclusive listing had expired prior to any of the activity upon which the appellee's claim is based. If this evidence was improperly admitted, which we think it unnecessary to decide, its admission was at most harmless error.

The second and third questions are these: (2) Was there sufficient proof of the appellee's employment and, if so, (3) was his right to a commission dependent upon the appellants' obtaining a stipulated net price for the property? The fourth question is this, if the appellee is entitled to any commission at all, is it more than $300, the amount by which the ultimate sale price exceeded the net price sought by the appellants?

Code (1951), Article 2, Section 17, provides that: "Whenever, in the absence of special agreement to the contrary, a real estate broker employed to sell, buy, lease or otherwise negotiate real or leasehold estates * * * procures in good faith a purchaser * * * and the person so procured is accepted as such by the employer, and enters

into a valid, binding and enforceable written contract of sale, * * * in terms acceptable to the employer, and such contract is accepted by employer and signed by him, the broker shall be deemed to have earned the customary or agreed commission, as the case may be, whether or not the contract entered into be actually [carried] into effect, unless performance of such contract be prevented, hindered or delayed by any act of the broker."

There was no written contract or express oral contract of employment of the appellee by the appellants, but it is claimed that there was conduct from which it could be found that a relationship of principal and agent existed between the parties. There need not be a written contract in order to have a binding agreement between the parties. When the appellee requested permission to show the property of the appellants to prospective purchasers, both parties obviously realized the type of relationship which was being created between them. There was a desire by the appellants to sell the property, and by allowing the appellee to show the property to various people they impliedly contracted to use the appellee as an agent for the purpose of that sale. In *Heise & Bruns v. Goldman,* 125 Md. 554, 94 A. 159, it was stated that, "The relation of principal and agent does not depend upon an express appointment and acceptance thereof, but it may be implied from the words and conduct of the parties and the circumstances." To the same effect is *B. & O. Railroad v. Jones & Laughlin Steel Co.,* 138 Md. 604, at 611, 114 A. 730, in which it is stated that, "An agency may be implied from conduct and need not be proven by evidence of an express appointment." As these cases show, the existence of an agency relationship is a question of fact. We think that the evidence was sufficient to support the finding of the trial Judge that a relationship of principal and agent was created in the present case when the appellants agreed to allow the appellee to show the house to prospects, with a view to effecting a sale, even though there was no written or explicit oral agreement to that effect. We also think that it was properly found

that under this agency the appellants were obligated to pay the customary commission in transactions involving the sale of real estate. Code (1951), Article 2, Section 17. Also, as was said in *Weinreb v. Strauss*, 80 A. 2d 47, a District of Columbia case, "It is the general rule, in the absence of an express agreement as to compensation, that one who employs a broker impliedly agrees to pay him the usual and customary commission." It was stipulated at the trial that the customary commission in sales of this type of property in this locality was five per cent.

In order for the appellee to recover his commission he must prove not only that he was employed by the appellants but also that he was the procuring cause of the sale. That he was the procuring cause is not challenged in this Court, and we shall therefore not discuss it at any length. The appellee brought the property to Mr. and Mrs. Jones' attention and took them to see it and discussed possible terms of sale and financing with them. It was through the efforts of the appellee and his office that the appellants came into contact with the buyers. Although the appellee did not actually participate in the final negotiations between the parties, his activity set forth above was sufficient to support the finding of the trial court that he was the procuring cause of the sale. *Buchholz v. Gorsuch*, 144 Md. 62, 122 A. 389; *Claiborne v. Brophy*, (C. C. A., 4th, Md.), 236 F. 190, 149 C. C. A. 380.

*Buchholz v. Gorsuch* and *Claiborne v. Brophy*, above cited, and *Jones v. Adler*, 34 Md. 440, are, we think, all directly in point on the broker's right to commissions where the seller closes a sale with a purchaser produced by the broker, without the broker's knowledge of, or participation in, the final negotiations, and at a price less than that at which the broker has been authorized to sell the property. Each of these cases supports the broker's right to a commission, and they are, we think, controlling in the present case.

In *Buchholz v. Gorsuch, supra,* the sellers requested a real estate broker to list their property for sale on a five

per cent commission basis. After advertising for some time the broker brought the property to the attention of the eventual purchasers, who then inspected it. About three months later the purchasers approached the sellers and they agreed on a final price which was less than the original figure given to the broker. This Court, in upholding a judgment for the appellee-broker, said, "That prerequisite to recovery [that the broker be the procuring cause of the sale] is satisfied if the testimony admits of the inference that the sale was accomplished as a result of the appellee's action in discovering the purchasers, showing them the property, and referring them to the appellants for further negotiations. The fact that the sale was effected by direct agreement of the vendors and vendees does not disentitle the appellee to commissions if his efforts may fairly be regarded as the procuring cause of that result."

In *Claiborne v. Brophy, supra,* the seller had written a letter to the plaintiff, a real estate broker, asking the broker to sell his business for him and offered the broker a commission of five per cent if he should find a purchaser at a certain specified price. The plaintiff in that situation got in touch with a prospective purchaser and wrote to the defendant about it. Subsequently the prospective buyer had the business inspected and later he and the defendant got together and consummated the sale between themselves at a price lower than that which the defendant had told the plaintiff he would accept. The defendant refused to pay the broker a commission, but the Court held that, "It is well settled that where one who [sic] has employed another to secure a purchaser for his property he cannot avail himself of the services of the agent and make the sale of the property by virtue of the information that he has received from the agent and thereby deprive the agent of his commissions. It is insisted by defendant that, inasmuch as this property was sold for a less sum than the price named to the plaintiff, the plaintiff is thereby barred from recovering anything for his services. The fact that this property

was sold for a less sum than the amount named to the plaintiff cannot affect the plaintiff's right to recover. One who has employed an agent to sell his property at a fixed sum, and on account of financial stress or otherwise takes the matter into his own hands and sells the property at a less price, cannot thereby avoid the obligations he is under to pay plaintiff a commission."

In *Jones v. Adler*, 34 Md. 440, the appellee was employed on a commission basis to sell certain property at $16,000. Later, however, the house was sold for $14,000 to purchasers introduced by the appellee. The appellee sued to recover his broker's commission, but the appellant claimed that because the sale was below the original price no commission was payable. The Court said: "Where there is a special contract by the terms of which the broker is not to be paid commissions unless he sells the property at a specified price, the sale by him at such a price is a *condition precedent* to his right of compensation, unless pending the negotiations, and whilst his agency remains unrevoked, the owner consents to a sale for a sum other than originally agreed upon."

A similar statement is made in *Blake v. Stump*, 73 Md. 160, at 169-170, 20 A. 788, at 790, which cites and relies upon *Jones v. Adler, supra*. In *Jones v. Adler*, the Court went on to say, "It is well settled, if the agent introduces or discloses the name of the purchaser, and such introduction or disclosure is the foundation upon which negotiations are begun and the sale effected, he will be entitled to commissions, and this too although in point of fact the sale may have been made by the owner. In other words, he cannot avail himself of the services, and by making a sale through information derived from the agent, deprive the latter of his commissions."

Applying that rule to this case, we hold that the property owners may not employ a broker to sell their property, and after obtaining potential purchasers through the broker, deal privately with the purchasers so as to cut off the broker's commission by consummating a sale at a price lower than that at which they have authorized

the broker to sell; and that the broker is entitled to the full customary commission and not merely $300.00.

The judgment of the Circuit Court will therefore be affirmed.

*Judgment affirmed, with costs.*