**Paul SNYDER and Mens and Boys Apparel Mart, Inc.**

v.

**HAMPTON INDUSTRIES, INC.**

Civ. A. No. M–81–348.

United States District Court, D. Maryland.

July 31, 1981.

George W. Liebmann and Stephen L. Snyder, Baltimore, Md., for plaintiffs.

Robert G. Levy, John M. Belferman, and Frank, Bernstein, Conaway & Goldman, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

This case is presently before the court on the defendant's motion to dismiss for lack of personal jurisdiction and improper venue, Rule 12(b)(2) and (3), Fed.R.Civ.P., or in the alternative, for transfer to the United States District Court for the Eastern District of North Carolina.[1] The plaintiffs have filed a response opposing the defendant's motion,[2] and the defendant has filed a reply to the plaintiffs' response and a supplemental memorandum.[3] The court having heard argument by counsel on July 17, 1981, the above-listed motions are now ready for disposition. Since the defendant's motion under Rule 12(b)(2) raises important questions concerning the statutory and constitutional limitations of Maryland's long arm statute, *Md. Cts. & Jud.Proc.Code Ann.* § 6–103 (1980 Rep.Vol.), the background of this case will be set out in some detail.

### I. Background

The plaintiffs, Paul Snyder and Mens and Boys Apparel Mart, Inc., brought this breach of contract action against the defendant, Hampton Industries, Inc., in February of 1981. Service of the summons and complaint was made upon Hampton by a private process server in North Carolina, pursuant to Rule 107, Maryland Rules of Procedure. *See* Local Rule 25. In Count I of the complaint, the plaintiffs allege that Hampton has breached a contract between the parties by failing to pay commissions earned by the plaintiffs, and by failing to abide by its delivery obligations regarding the shipment of goods to customers whose purchase orders were obtained by the plaintiffs. Count I also charges Hampton with fraudulently concealing the nonpayment of commissions, and with exercising duress upon plaintiff Snyder to forestall his taking legal action. In Count II, Hampton is alleged to have breached a settlement agreement entered into by the parties in Pennsylvania regarding the nonpayment of the commissions. Subject matter jurisdiction is alleged under 28 U.S.C. § 1332(a).

Snyder, a citizen of Maryland, is the president of Mens and Boys Apparel Mart, Inc., a Maryland corporation that has its principal place of business in Baltimore City. Hampton is incorporated under the laws of North Carolina, and alleges that its principal place of business is Kinston, North Carolina, although it has a sales office in New York City. Hampco Apparel, Inc., a wholly-owned subsidiary of Hampton, is incorporated in and licensed to do business in Maryland.[4] Hampco has not been named as a defendant in this action.

---

1. Paper No. 4.

2. Paper No. 7.

3. Paper Nos. 8 and 13.

4. Hampco was an existing Maryland corporation, called Standard Garments, when it was

The plaintiffs allege that the relationship between the parties began in 1951. On February 13, 1951, the plaintiffs entered into a written selling agency agreement with Samsons, Inc., the corporate predecessor of the defendant.[5] Under that agreement, the plaintiffs were appointed a "selling agency" and the "exclusive representative" of Samsons' clothing lines in Maryland, Delaware, Pennsylvania, the District of Columbia, and Northern Virginia.[6] In Addition, Samsons agreed to furnish the plaintiffs with certain documents pertaining to the accounts in the selling area, and to "deliver 90% of all accepted orders."

Hampton admits that Samsons was its corporate predecessor, but asserts that the written agreement was terminated in 1967. Hampton concedes, however, that it maintained a business relationship with the plaintiffs on a "verbal basis," and continued to pay commissions on orders solicited from Maryland customers. The plaintiffs contend that only the commission rate aspect of the 1951 agreement has been modified. According to the plaintiffs, the parties continued to operate under all of the other terms set out in the written agreement.

The exact nature of the parties' relationship is not entirely clear. Based on the affidavits and other materials submitted by the parties, however, the basic outline of their dealings appears to be as follows. The plaintiffs solicit purchase orders from customer accounts in Maryland and the other states within the selling territory for Hampton products, including the Hampco lines. Customer orders are recorded on special purchase order forms supplied to the plaintiffs by Hampton. The plaintiffs allege that such activity has been continuous since 1951, and that the value of the orders obtained from Maryland customers in the last calendar year exceeded one million dollars.

The purchase orders obtained by the plaintiffs are forwarded to Hampton's office in New York City. The New York City office then sends the purchase orders to Hampton's office in Kinston, North Carolina. When the purchase orders are approved, they are entered into a computer according to the plaintiffs' sales representative number. The computer prepares a printout of all of the orders when the goods are shipped and invoiced to the customers. Hampton alleges that its sales contracts with the account customers provide that the goods are to be shipped by common carrier, either F.O.B. Kinston or Snow Hill, North Carolina, or F.O.B. Martinsville, Virginia. Commissions paid by Hampton to the plaintiffs are based on actual shipments of goods to the account customers. Payment of commissions is by mail, with Hampton's check drawn on either a North Carolina or a New York bank.

With respect to Hampton's Maryland "contacts," the affidavit of Sol Schechter, its president,[7] states that: (1) Hampton has never been licensed to do business in Maryland; (2) Hampton maintains no bank accounts or other assets in Maryland; (3) Hampton has never had an office, place of business, or a telephone listing in Maryland; (4) Hampton has never had agents, servants, or employees in Maryland; (5) all meetings with the plaintiffs were held outside of Maryland; (6) the plaintiffs have never entered into any contract with Hampco; and (7) neither of the plaintiffs has ever had the authority to enter into contracts with the account customers on behalf of Hampton. Hampton further contends that the plaintiffs are independent contractors, and that all purchase orders obtained by them must be approved by Hampton at its office in Kinston, North Carolina. The invoices for merchandise

acquired by Hampton. The Maryland facilities of this company were closed following its purchase by Hampton, and Hampco's principal place of business is now the same as Hampton's.

5. Paper No. 7, Ex. 2.

6. The plaintiffs' claim regarding the alleged nonpayment of commissions concerns commissions from Hampton's sales to Maryland customers and to customers in the other states located in the plaintiffs' selling territory.

7. Paper No. 4, Ex. 1.

sold by Hampton to the account customers are issued in North Carolina, and the customers mail their payments either directly to Hampton's North Carolina office, or to a "lock box" in Pennsylvania.

According to the plaintiffs, Hampton sends them prepared promotional literature for distribution to Hampton's customers within the plaintiffs' selling area, and authorized the plaintiffs to list Hampton and Hampco in the Baltimore City business telephone directory as having an office at the plaintiffs' place of business in Baltimore City. The plaintiffs also note that Hampton corresponds directly with Maryland customers regarding the purchase orders obtained by the plaintiffs, and that Hampton's 1979 and 1980 annual reports state that Hampton maintains "regional sales offices" in several cities, including Baltimore. The promotional literature supplied to the plaintiffs by Hampton also lists the plaintiffs' place of business in Baltimore as a Hampton "showroom."

## II. Personal Jurisdiction

The Maryland long arm statute defines the circumstances under which Maryland courts may exercise personal jurisdiction over nonresident defendants. It provides as follows:

"(a) *Condition*—If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

(b) *In general*—A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any

other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing."

*Md. Cts. & Jud. Proc. Code Ann.* § 6–103 (1980 Rep. Vol.).

In *Craig v. General Finance Corp. of Illinois,* 504 F.Supp. 1033 (D. Md. 1980), this court outlined the analysis to be employed when jurisdiction is asserted under the long arm statute.

"For the statute to apply it is sufficient if any of the provisions of subsection (b) are satisfied. *United Merchants & Mfrs., Inc. v. David & Dash, Inc.,* 439 F.Supp. 1078, 1082 (D.Md.1977); *Lawson v. Baltimore Paint & Chemical Corp.,* 298 F.Supp. 373, 377 (D.Md.1969). Application of the long arm statute is essentially a two-step process. The court must first determine whether a particular subsection purports to authorize service of process on the non-resident. Second, the court must determine whether that service and the attendant exercise of personal jurisdiction comports with due process. *See Haynes v. James H. Carr, Inc.,* 427 F.2d 700, 703 (4th Cir.), *cert. denied,* 400 U.S. 942, 91 S.Ct. 238, 27 L.Ed.2d 245 (1970); *Geelhoed v. Jensen,* 277 Md. 220, 224, 352 A.2d 818 (1976).

"This court is bound by the decisions of the Court of Appeals of Maryland as to whether a particular subsection will reach certain conduct. *McLaughlin v. Copeland,* 435 F.Supp. 513, 522 (D.Md.1977); *Bennett v. Computers Intercontinental, Inc.,* 372 F.Supp. 1082, 1084 (D.Md.1974). *See Shealy v. Challenger Mfg. Co.,* 304 F.2d 102, 104 (4th Cir. 1962). Federal law is controlling, however, as to whether the exercise of personal jurisdiction violates

due process. *United Merchants & Mfrs., Inc. v. David & Dash, Inc.*, 439 F.Supp. at 1801. The exercise of personal jurisdiction by this court over defendant, therefore, is subject ultimately to the constitutional limitations set forth by the Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny.[2]

[2] *See, e.g., Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Kulko v. California Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). *See generally* Louis, the Grasp of Long Arm Jurisdiction Finally Exceeds Its Reach: A Comment on *World-Wide Volkswagen Corp. v. Woodson and Rush v. Savchuk*, 58 N.C.L.Rev. 407 (1980)."

\* \* \* \* \* \*

504 F.Supp. at 1036.

### A. Subsection (b)(1)

■ The Court of Appeals of Maryland has stated repeatedly that the intent of the legislature in enacting the long arm statute was to expand the exercise of personal jurisdiction to the extent permitted by the Due Process Clause. *See, e. g., Mohamed v. Michael*, 279 Md. 653, 657, 370 A.2d 551 (1977); *Geelhoed v. Jensen*, 277 Md. 220, 224, 352 A.2d 818 (1976); *Lamprecht v. Piper Aircraft Corp.*, 262 Md. 126, 130, 277 A.2d 272 (1971); *Groom v. Margulies*, 257 Md. 691, 700–01, 265 A.2d 249 (1970). This broad assertion has its genesis in dicta by Judge Hammond in *Gilliam v. Moog Industries, Inc.*, 239 Md. 107, 210 A.2d 390 (1965). Although the decision in *Gilliam* rested upon the application of the "doing business" test of *Md.Code Ann.* art. 23, § 92 (1957), Judge Hammond commented on the then new long arm statute, *Md.Code Ann.* art. 75, § 96 (Supp.1965) as follows:

"It seems clear that the purpose of the Legislature in enacting these new provisions was to give the courts of the State personal jurisdiction over all out of state persons and corporations which constitutionally could be reached as having had sufficient Maryland contacts, under the

jurisdictional yardstick established by the Supreme Court in cases such as *International Shoe Co. v. Washington*, 326 U.S. 310 [66 S.Ct. 154], 90 L.Ed. 95; *McGee v. International Life Ins. Co.*, 355 U.S. 220 [78 S.Ct. 199], 2 L.Ed.2d 223; and *Hanson v. Denckla*, 357 U.S. 235 [78 S.Ct. 1228], 2 L.Ed.2d 1283."

239 Md. at 111, 210 A.2d 390.

As has been noted in several decisions by the federal courts, the broad statement in *Gilliam* is not entirely accurate, at least with respect to subsections (b)(3) and (b)(4). *See, e. g., Beaty v. M. S. Steel Co.*, 401 F.2d 157, 159–60 (4th Cir. 1968), *cert. denied*, 393 U.S. 1049, 89 S.Ct. 686, 21 L.Ed.2d 691 (1969); *Craig v. General Finance Corp. of Illinois*, 504 F.Supp. at 1036; *Piracci v. New York City Employees' Retirement System*, 321 F.Supp. 1067, 1070 (D.Md.1971). *See also Geelhoed v. Jensen*, 277 Md. at 223–24 n. 3, 352 A.2d 818. With respect to subsection (b)(1), however, the federal courts have generally taken the Court of Appeals at its word, and have analyzed "transacting business" cases under the Due Process standards developed by the Supreme Court. *See, e. g., McLaughlin v. Copeland*, 435 F.Supp. 513, 523 (D.Md.1977); *Bennett v. Computers Intercontinental, Inc.*, 372 F.Supp. 1082, 1085 (D.Md.1974); *Malinow v. Eberly*, 322 F.Supp. 594, 598 (D.Md.1971); *Piracci v. New York City Employees' Retirement System*, 321 F.Supp. at 1070.

The facts presented by this case necessitate a reconsideration of the apparently broad scope of Maryland's long arm statute, particularly subsections (b)(1) and (b)(2). As Judge Eldridge prophecized in *Krashes v. White*, 275 Md. 549, 559, 341 A.2d 798 (1975), "[p]erhaps fact situations will arise which will be deemed outside the scope of the Maryland 'long arm' statute, although there may be a constitutional basis for jurisdiction over the nonresident defendant." This case would seem to test the limits of the long arm statute, and the validity of the Court of Appeals' frequent pronouncements regarding its coextensiveness with the Due Process Clause.

It is not altogether clear whether the physical presence of the nonresident or his agent is a prerequisite to jurisdiction under subsection (b)(1). As will be discussed below, those Maryland cases finding jurisdiction under subsection (b)(1) have invariably either noted or relied upon some act committed by the nonresident or his agent in the state. An issue that must be resolved first, however, concerns the applicability of those cases decided under the "doing business" for registration purposes test of *Md. Corp. & Ass'ns Code Ann.*, § 7–301 and its predecessors,[8] and *Md.Code Ann.*, art. 23, § 92 (1957) (repealed by Acts of 1967, ch. 532), which permitted the exercise of personal jurisdiction over a foreign corporation "doing business" in Maryland. *E. g., G.E.M., Inc. v. Plough, Inc.*, 228 Md. 484, 488, 180 A.2d 478 (1962).

The question concerning the applicability of the "doing business" cases has arisen because Hampton asserts that its conduct falls within the "mere solicitation" rule discussed in cases such as *Feldman v. Thew Shovel Co.*, 214 Md. 387, 135 A.2d 428 (1957) and *Thomas v. Hudson Sales Corp.*, 204 Md. 450, 105 A.2d 225 (1954). Hampton reasons that since the "doing business" cases were decided after, and in fact discussed, *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), these cases mark the extent to which a foreign corporation can have contacts with Maryland and not be subject to suit in this state.

 The Court of Appeals of Maryland has noted, but has not decided, the issue raised by Hampton. *S.A.S. Personnel Consultants, Inc. v. Pat-Pan, Inc.*, 286 Md. 335, 338 n. 1, 407 A.2d 1139 (1979). As the Court of Appeals recognized in that case, several courts have indicated, without actually holding, that the "transacting business" test of subsection (b)(1) requires less contacts with the forum than are necessary to satisfy a "doing business" standard. *See, e. g., Premier Industrial Corp. v. Nechamkin*, 403 F.Supp. 180, 184 n. 6 (D.Md.1975); *Beaty v.*

*M.S. Steel Co.*, 276 F.Supp. 259, 262 (D.Md. 1967), *aff'd.* 401 F.2d 157 (4th Cir. 1968), *cert. denied*, 393 U.S. 1049, 89 S.Ct. 686, 21 L.Ed.2d 691 (1969). Professor Auerbach commented on this question as follows: "The basic question which has arisen is what kind of activity amounts to the 'transaction of business.' It is clear that the intent of the statute is to require considerably less than what is required under the 'doing business' test." Auerbach, The "Long Arm" Comes to Maryland, 26 *Md.L. Rev.* 13, 33 (1966) (footnote omitted). It should also be noted that Illinois, which has retained "doing business" as an alternate jurisdictional basis, *Ill.Rev.Stat.* ch. 110, § 13.3, requires significantly greater contacts with the forum than are needed under section 17(1)(a). *E. g., Chandler Leasing Co., Inc. v. Trus Joist Corp.*, 90 Ill.App.3d 875, 46 Ill.Dec. 293, 414 N.E.2d 15, 18–20 (1980). The same approach is followed by the New York courts. *E. g., Fontanetta v. American Board of Internal Medicine*, 421 F.2d 355, 357 (2d Cir. 1970) (distinguishing "doing business" under C.P.L.R. § 301 from "transacting business" under C.P.L.R. § 302(a)(1)). Given the purposes underlying the enactment of Maryland's long arm statute, as well as the language of subsection (b)(1), this court holds that significantly fewer contacts are needed to constitute "transacting business" than are required to permit the exercise of personal jurisdiction under the old "doing business" test. Consequently, the principles outlined in prior cases, such as *Thew Shovel Co.*, are not controlling in connection with an analysis under subsection (b)(1).

It has often been noted that subsection (b)(1) is derived from section 1.03(a)(1) of the Uniform Interstate and International Procedure Act, 9B U.L.A. 310 (1966 ed.). *See, e. g., Malinow v. Eberly*, 322 F.Supp. at 598; *Hardy v. Rekab, Inc.*, 266 F.Supp. 508, 514 n.12 (D.Md.1967); *Groom v. Margulies*, 257 Md. at 702, 265 A.2d 249. Section 1.03(a)(1) of the Uniform Act was itself

---

8. *Md.Code Ann.* art. 23, § 91 (1957); *Md.Code Ann.* art. 23, § 88 (1951); *Md.Code Ann.* art. 23, § 119 (1924).

derived from the Illinois long arm statute, *Ill.Rev.Stat.* ch. 110, § 17(1)(a). According to the Commissioners on Uniform State Laws, section 1.03(a)(1) "should be given the same expansive interpretation that was intended by the draftsmen of the Illinois Act and has been given by the courts of that state." 9B U.L.A. 310–11 (1966 ed.).

In *Grobark v. Addo Machine Co., Inc.*, 16 Ill.2d 426, 158 N.E.2d 73, 79 (1959), the Illinois Supreme Court held that a nonresident manufacturer had not transacted business in Illinois, within the meaning of section 17(1)(a), when it had shipped products by an independent carrier to a purchaser in Illinois. Relying on *Grobark*, the First District Appellate Court of Illinois, in *Saletko v. Willys Motors, Inc.*, 36 Ill.App.2d 7, 183 N.E.2d 569, 571 (1962), held that the physical presence of the nonresident or his agent was a prerequisite to jurisdiction under section 17(1)(a). However, two years after *Grobark*, the Illinois Supreme Court decided *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961). In that case, the court construed section 17(1)(b) of the long arm statute, the tortious act section, as permitting the exercise of personal jurisdiction over a nonresident who had never been physically present in Illinois. In light of *Gray*, Professor Currie predicted that the physical presence requirement of *Grobark* and *Saletko* would be abandoned by the Illinois courts. He reasoned that if a tortious act could be committed *in the state* without the physical presence of the defendant, then a defendant could transact business *in the state* without ever having entered the forum. Currie, The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois, 1963 *U.Ill.L.F.* 533, 566–79. In 1966, the First District Appellate Court of Illinois, which had decided *Saletko*, reversed itself and held that as with section 17(1)(b), the physical presence of the nonresident or his agent was not a prerequisite to jurisdiction under section 17(1)(a). *Koplin v. Thomas, Haab & Botts*, 73 Ill.App.2d 242, 219 N.E.2d 646, 651–652 (1966). Although it appears that *Grobark* has not been expressly overruled by the Illinois Supreme Court, it is clearly the law in Illinois today that jurisdiction may be exercised under section 17(1)(a) although neither the nonresident nor his agent has ever been physically present in the state. The issue to be decided in all long arm cases is whether the nonresident has sufficient contacts with Illinois under *International Shoe* and its progeny. *See, e. g., Coca-Cola Co. v. A. Epstein & Sons International, Inc.*, 89 Ill.App.3d 253, 44 Ill. Dec. 551, 411 N.E.2d 917, 921 (1980); *Mergenthaler Linotype Co. v. Leonard Storch Enterprises, Inc.*, 66 Ill.App.3d 789, 23 Ill. Dec. 352, 383 N.E.2d 1379, 1385–86 (1978); *International Merchandising Associates, Inc. v. Lighting Systems, Inc.*, 64 Ill.App.3d 346, 20 Ill.Dec. 838, 380 N.E.2d 1047, 1050–54 (1978); *First Professional Leasing Co. v. Rappold*, 23 Ill.App.3d 420, 319 N.E.2d 324, 326–27 (1974).

The federal courts have reached the same conclusion in interpreting section 17(1)(a). *See, e. g., Biltmoor Moving & Storage Co. v. Shell Oil Co.*, 606 F.2d 202, 206–07 (7th Cir. 1979); *Consolidated Laboratories, Inc. v. Shandon Scientific Co.*, 384 F.2d 797, 800–01 (7th Cir. 1967); *Promotion Network, Inc. v. C. Da Silva (Vinhos) S.A.R.L.*, 63 F.R.D. 435, 436–39 (N.D.Ill.1974). *See also Fisons Limited v. United States*, 458 F.2d 1241, 1249–52 (7th Cir.) (Stevens, J.), *cert. denied*, 405 U.S. 1041, 92 S.Ct. 1312, 31 F.3d.2d 581 (1972).

The District of Columbia Court of Appeals appears to have accorded an equally expansive interpretation to D.C.Code § 13–423(a)(1), the transacting business prong of the District of Columbia's long arm statute. Like Maryland's long arm statute, D.C.Code § 13–423 is derived from the Uniform Act, and it was intended by Congress "to provide the District with a long-arm statute equivalent in scope to those already in effect in Maryland and Virginia." *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 810 (D.C.App.1976). *See Margoles v. Johns*, 483 F.2d 1212, 1214–16 (D.C.Cir.1973). The District of Columbia Court of Appeals has stated repeatedly that the jurisdictional reach of D.C.Code § 13–423 is coextensive with

the Due Process Clause. *E. g., Berwyn Fuel, Inc. v. Hogan*, 399 A.2d 79, 80 (D.C. 1979).

In *Cohane v. Arpeja-California, Inc.*, 385 A.2d 153 (D.C.), *cert. denied*, 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978), the court was confronted with a factual situation almost identical to that present in this case. The plaintiff, a resident of Delaware, brought suit in the District of Columbia against a nonresident California corporation engaged in the business of manufacturing women's apparel. The plaintiff's claim was based upon the defendant's alleged failure to pay commissions in accordance with their contract. The contract, which was executed in Delaware, provided that the plaintiff was the defendant's "independent agent" and was assigned to a selling territory consisting of eastern Pennsylvania, Maryland, Delaware, and the District of Columbia. The plaintiff solicited orders on behalf of the defendant, who in turn sold the merchandise to stores in the District and in the other states in the plaintiff's territory.

The trial court had dismissed the case on the ground of *forum non conveniens*. On appeal, however, the court addressed the jurisdictional question as well as the convenience argument. Noting that less of a nexus between the nonresident and the forum is required for a finding of "transacting business" under the long arm statute, as compared with that necessary to predicate jurisdiction on the basis of "doing business," the court held that the defendant's conduct fell within the reach of D.C.Code § 13-423(a)(1). The court held further that such an exercise of personal jurisdiction would not violate due process. 385 A.2d at 158-59.

The court also rejected the defendant's contention that only those parts of the plaintiff's claim based on sales to District customers could be adjudicated in the District. Judge Yeagley stated:

"In our view, [defendant's] contentions are based on an erroneous interpretation of § 13-423. The limitation in § 13-423(b) that the claim for relief must arise

from the transaction of business in the District of Columbia is meant to prevent 'the assertion of claims in the forum state that do not bear some relationship to the acts in the forum state relied upon to confer jurisdiction.' *Malinow v. Eberly*, 322 F.Supp. 594, 599 (D.Md.1971). Once, however, the claim is related to acts in the District, § 13-423 does not require that the scope of the claim be limited to activity within this jurisdiction.

"This view, is supported by the legislative history of § 13-423. The District of Columbia 'long arm' statute is modeled after the Uniform Interstate and International Procedure Act. *See Founding Church of Scientology, etc. v. Verlag*, 175 U.S.App.D.C. 402, 405, 536 F.2d 429, 432 (1976). The note of the Commissioners on Uniform State Laws states in reference to the Uniform Act counterpart of § 13-423:

The concept of cause of action or claim for relief should be broadly construed to cover an entire transaction so that, when possible, the entire dispute may be settled in a single litigation. Subdivision (b) is designed to prevent assertion of independent claims *unrelated to any activity described* in subdivision (a) of § 103. [13 U.L.A. § 103 at 288 (1975) (emphasis supplied)]."

385 A.2d at 158-59. *Cf. Berwyn Fuel, Inc. v. Hogan*, 399 A.2d at 80 (plaintiff's claims wholly unrelated to defendant's transaction of business in the District).

In *Wilmington Supply Co. v. Worth Plumbing & Heating, Inc.*, 505 F.Supp. 777 (D. Del. 1980), Chief Judge Latchum considered the reach of the "transacting business" prong of Delaware's long arm statute, *Del. Code Ann.*, tit. 10, § 3104(c)(1). Noting that the Delaware statute was derived from section 1.03 of the Uniform Act, *Eudaily v. Harmon*, 420 A.2d 1175, 1180 (Del.1980), Chief Judge Latchum concluded that the Delaware courts would follow the interpretation accorded to the phrase "transacting business" by Illinois courts in connection with section 17(1)(a). Accordingly, the court held that personal jurisdiction over a

nonresident was not dependent upon the nonresident having been physically present in the state. 505 F.Supp. at 780.

The New York long arm statute, C.P.L.R. § 302, is modeled after section 17 of *Ill.Rev. Stat.* ch. 110, and the Court of Appeals of Maryland has often relied on Judge Fuld's discussion of "transacting business" in *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68, *cert. denied sub nom. Estwing Mfg. Co. v. Singer*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965). *See, e. g., Mohamed v. Michael*, 279 Md. at 658, 370 A.2d 551; *Harris v. Arlen Properties, Inc.*, 256 Md. at 197–98, 260 A.2d 22; *Novack v. National Hot Rod Association*, 247 Md. 350, 354, 231 A.2d 22 (1967). As construed by the New York Court of Appeals, "transacting business" generally requires the nonresident to have engaged in some "purposeful activities" *within* the state. *See, e. g., McGowan v. Smith* 52 N.Y.2d 268, 437 N.Y.S.2d 643, 419 N.E.2d 321, 322 (1981); *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 261 N.Y.S.2d at 17, 209 N.E.2d at 75. The Second Circuit has commented, however, that Judge Fuld's opinion in *Longines-Wittnauer* "made it quite clear that CPLR § 302 does not confer the full complement of personal jurisdiction constitutionally permitted." *Galgay v. Bulletin Co., Inc.*, 504 F.2d 1062, 1066 (2d Cir. 1974).

The actual scope of C.P.L.R. § 302(a)(1) is unclear. In *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970), Judge Fuld commented:

It is important to emphasize that *one need not be physically present in order to be subject to the jurisdiction of our courts under CPLR 302 for, particularly in this day of instant long-range communications, one can engage in extensive purposeful activity here without ever actually setting foot in the State.* (See *International Shoe Co. v. Washington*, 326 U.S. 310, 316–17, 66 S.Ct. 154, [158, 159] 90 L.Ed. 95, *supra; Lewin v. Bock Laundry Mach. Co.*, 16 N.Y.2d 1070, 266 N.Y.S.2d 391, 213 N.E.2d 686; *Benedict Corp. v.*

*Epstein*, 47 Misc.2d 316, 262 N.Y.S.2d 726.) *Any implication, in older cases, that physical presence was a necessary factor in obtaining jurisdiction over nonresidents was expressly rejected by the Supreme Court in the International Shoe case*—the case which provided the constitutional authority for CPLR 302—where the court wrote (326 U.S. at pp. 316–17, 66 S.Ct. at p. 158): "The terms 'present' and 'presence' are used merely to symbolize those activities * * * which courts will deem to be sufficient to satisfy the demands of due process."

308 N.Y.S.2d at 340, 256 N.E.2d at 508 (emphasis supplied).

As the courts that have cited the above passage have noted, *see, e. g., Empresa Nacional Siderurgica v. Glazer Steel Co.*, 503 F.Supp. 1064, 1066 (S.D.N.Y.1980); *Plaza Realty Investors v. Bailey*, 484 F.Supp. 335, 345 & n. 8 (S.D.N.Y.1979), however, Judge Fuld's opinion in *Parke-Bernet*, did not do away entirely with the "presence" concept. The nonresident in *Parke-Bernet* had submitted bids by telephone to an auction being held in New York. An employee of the plaintiff kept the nonresident informed on the bidding and relayed the nonresident's bids to the auctioneer. Judge Fuld's actual holding in that case was based on alternative grounds. On the one hand, the nonresident himself had transacted business in New York by "projecting" himself into the auction room and competing with the other bidders. Alternatively, the nonresident was present through an agent, the plaintiff's employee who had assisted the nonresident in bidding. 308 N.Y.S.2d at 340–341, 256 N.E.2d at 508–09. Consequently, it appears that New York would still require some physical act in the state, by the nonresident or his agent, before holding that the nonresident had transacted business in the state. *But see China Union Lines, Ltd. v. American Marine Underwriters, Inc.*, 454 F.Supp. 198, 202–03 (S.D.N.Y. 1978).

It should be noted, however, that the New York cases cited above are single transaction cases. In other words, the

claim against the nonresident was based on a single contract or transaction.

If subsection (b)(1) of the Maryland long arm statute is indeed coextensive with the Due Process Clause, a nonresident can reasonably be held to have transacted business in Maryland although never physically present in the state. Such a conclusion draws support from three factors. First, nowhere in the language of subsection (b)(1), or in its "legislative history," does there appear the requirement that the nonresident commit an *act* in the state. Neither logic nor semantics need be tortured to construe the phrase "transacting business in the state" as *not* requiring a physical act in the state. Second, section 1.03(a)(1) of the Uniform Act, from which subsection (b)(1) was derived, was clearly intended to expand the exercise of personal jurisdiction beyond the conceptual limitations of the "presence" and "doing business" rationales. Finally, both the Illinois and District of Columbia courts have construed their "transacting business" statutes, which are said to be coextensive with due process, to permit the exercise of personal jurisdiction over a nonresident who had not committed physical acts in the state.

The Court of Appeals of Maryland has not addressed the "presence" issue in a non-single transaction case. Like the New York cases cited above, all of that court's subsection (b)(1) cases involved either a single contract or a single shipment of goods into the state. In light of the factors noted above, and taking the Court of Appeals at its word regarding the constitutional reach of subsection (b)(1), this court holds that a nonresident who has never entered the state, either personally or through an agent, may be deemed to have "transacted business" in the state within the meaning of subsection (b)(1).

Whether a nonresident's contacts with the state are of a sufficient quality to satisfy the requirements of the Due Process Clause is another matter. In view of the continuous and systematic nature of Hampton's contacts with Maryland, however, and its purposeful sales to Maryland customers based on orders obtained on its behalf by the plaintiffs, requiring Hampton to defend a lawsuit in Maryland based on a claim having a substantial relationship with those sales would not offend the Due Process Clause. *See* discussion in section II(D) *infra.* *See generally Hardy v. Pioneer Parachute Co.,* 531 F.2d 193, 195 (4th Cir. 1976); *Stephenson v. Jordan Volkswagen, Inc.,* 428 F.Supp. 195, 197–98 (W.D.N.C.1977).

Assuming, however, that subsection (b)(1) does require the commission of acts in the state by the nonresident or his agent,[9] the court may still exercise personal jurisdiction over Hampton. Certain of the plaintiffs' acts in Maryland can be attributed to Hampton for jurisdictional purposes.

The New York courts permit the exercise of personal jurisdiction over a nonresident who has acted in the state through an agent, when the nonresident is sued by a third party. When it is the agent suing the nonresident, those courts will not attribute the agent's in-state acts to the nonresident, even if a classic agency relationship is involved. *Haar v. Armendaris Corp.,* 31 N.Y.2d 1040, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973), *rev'ing,* 40 A.D.2d 769, 337 N.Y. S.2d 285 (1972) (Court of Appeals adopted dissenting opinion below). *See, e. g., Loria & Weinhaus, Inc. v. H. R. Kaminsky & Sons, Inc.,* 80 F.R.D. 494, 498 (S.D.N.Y. 1978); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Alexiou,* 397 F.Supp. 1292, 1293–95 (S.D.N.Y.1975). This latter rule has been criticized by New York commentators, *see, e. g.,* McLaughlin, *Practice Commentary, C.P.L.R.* § 302 (McKinney Supp. 1975), and is inconsistent with the conclusion reached by the District of Columbia

---

**9.** Professor Auerbach has commented that given the existence of subsections (b)(2) and (b)(4), which authorize jurisdiction over a nonresident who has not performed acts in the state, it would be "inconsistent with the overall structure of the Maryland Act" to exercise jurisdiction over an "absent defendant" under subsection (b)(1). Auerbach, The "Long Arm" Comes to Maryland, 26 *Md.L.Rev.* at 36.

Court of Appeals in *Rose v. Silver*, 394 A.2d 1368 (D.C.1978).

Writing for the court in *Rose*, Judge Ferren first distinguished *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d at 812, which held that the in-state acts of an "independent contractor" could not be attributed to the nonresident for jurisdictional purposes. Judge Ferren reasoned that due process would not permit such attribution because "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of a contact with the forum State." 394 A.2d at 1370, *quoting Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). In contrast, an agency relationship that contemplates some measure of control over the forum state actor "results in 'the defendant's purposefully avail[ing] itself of the privilege of conducting activities within the forum state.'" 394 A.2d at 1371, *quoting Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239. This court finds Judge Ferren's reasoning in *Rose* to be more persuasive than that employed by the New York courts, and therefore declines to follow the nonattribution rule of *Haar*.[10]

■ Whether an agency relationship existed between Hampton and the plaintiffs must be determined by examining the relations between the parties as manifested by their agreements and their acts. *E. g., Hare v. Family Publications Service, Inc.*, 342 F.Supp. 678, 682 (D.Md.1972). An agency relationship does not depend on an express appointment and acceptance thereof, but "may be implied from the words and conduct of the parties and the circumstances." *Heslop v. Dieudonne*, 209 Md. 201, 206, 120 A.2d 669 (1956), *quoting Heise & Bruns Mill & Lumber Co. v. Goldman*, 125 Md. 554, 559, 94 A. 159 (1915). *See Medical Mutual Liability Insurance Society v. Mutual Fire, Marine & Inland Insurance Co.*, 37 Md.App. 706, 712, 379 A.2d 739 (1977).

Hampton contends that the plaintiffs are independent contractors. According to Hampton, it exercises no control over the plaintiffs' business operations, and the plaintiffs have no authority to enter into contracts on its behalf.

■ The use of the label "independent contractor" does not aid in determining whether the plaintiffs' relationship with Hampton is such that their in-state acts can be attributed to Hampton for jurisdictional purposes. Section 2 of the *Restatement (Second) of Agency* (1958) divides "agents" into two categories, "servants" and "non-servants." The distinguishing factor concerns the principal's right to control the agent's physical conduct. This distinction is significant with respect to the principal's tort liability to third persons. *See Restatement (Second) of Agency* §§ 250–67 (1958).

Nonservant "agents" are classified as independent contractors.

> "An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. *He may or may not be an agent.*"

Restatement (Second) of Agency § 2(3) (1958) (emphasis supplied).

According to section 14N of the Restatement (Second):

> "One who contracts to act on behalf of another and subject to the other's control except with respect to his physical conduct *is an agent and also an independent contractor.*"

(emphasis supplied).

Comment *a* to section 14N provides the following explanation:

> "As stated in Section 2, 'independent contractor' is a term which is antithetical to the word 'servant,' although not to be word 'agent.' *In fact, most of the persons known as agents*, that is, brokers,

---

10. Although bound to follow the *Haar* rule, the Second Circuit has questioned its soundness. *See, e. g., Merrill Lynch, Pierce, Fenner &*

*Smith, Inc. v. Lecopulos*, 553 F.2d 842, 844 (2d Cir. 1977); *Galgay v. Bulletin Co., Inc.*, 504 F.2d at 1065 n. 1.

factors, attorneys, collection agencies, and *selling agencies* are independent contractors as the term is used in the Restatement of this Subject, since they are contractors but, although employed to perform services, are not subject to the control or right to control of the principal with respect to their physical conduct in the performance of the services. *However, they fall within the category of agents. They are fiduciaries; they owe to the principal the basic obligations of agency: loyalty and obedience.*" (emphasis supplied).

Thus, while an absolute right to control the actor's physical conduct may be necessary in order to hold a principal liable for the actor's tortious conduct, such is not necessary for there to be an agency relationship between the parties themselves. Consequently, an agency relationship may have existed between Hampton and the plaintiffs, sufficient for jurisdictional purposes, although the plaintiffs may not have been traditional, general agents. *See Restatement (Second) of Agency* § 3 (1958).

Several factors indicate that an agency relationship existed between Hampton and the plaintiffs that is sufficient for jurisdictional purposes. The original contract between the plaintiffs and Samsons, the terms of which the plaintiffs allege continue in effect except for the commission rate, appointed the plaintiffs as a "selling agency" and the "exclusive representative" of certain clothing lines in Maryland and other states. The agreement also provided that the plaintiffs would be furnished with copies of: (1) all correspondence pertaining to all customers; (2) all orders; and (3) invoices of shipments. Hampton prepares special promotional and advertising literature to be distributed by the plaintiffs to Hampton's customers within the selling territory. Some of that literature designates the plaintiffs' place of business in Baltimore as Hampton's "showroom." Hampton also provides the plaintiffs with Hampton and Hampco purchase order forms that are to be used for recording customer orders. In addition, the plaintiffs allege that Hampton authorized them to list Hampton and Hampco in the Baltimore City business telephone directory as having an office at the plaintiffs' address in Baltimore City. Hampton's 1979 annual report states that "sales offices and showrooms are maintained by Company sales agents in . . . Baltimore." Hampton's 1980 annual report states that "regional sales offices are maintained in . . . Baltimore."

Although the plaintiffs may not be general agents of Hampton, the above factors indicate that they have performed acts in Maryland on behalf of, and at the direction of, Hampton. Moreover, Hampton itself holds the plaintiffs out to its shareholders, and presumably the world, as its sales representatives in Baltimore City. Consequently, the court concludes that Hampton has performed acts in Maryland, through the activities of the plaintiffs, and that such acts constitute "transacting business" within the meaning of subsection (b)(1).

In light of the court's alternative holdings under subsection (b)(1), the court need not address the question of whether the Maryland activities of Hampco can be attributed to Hampton for jurisdictional purposes.[11]

11. Whether Hampco's incorporation and activities in Maryland can be attributed to Hampton for the purpose of establishing "minimum contacts" is open to question. According to Hampton, the Supreme Court's decision in *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, [45 S.Ct. 250, 69 L.Ed. 634] (1925), precludes consideration of Hampco's Maryland contacts. Recent cases by courts in this Circuit, however, have cast serious doubt upon the applicability of *Cannon* to the "minimum contacts" analysis of *International Shoe Co. v. Washington*, 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95] (1945). *See, e. g., Consolidated Engineering Co. v. Southern Steel Co.*, 88 F.R.D. 233, 235–38 (E.D.Va.1980); *Finance Co. of America v. BankAmerica Corp.*, 493 F.Supp. 895, 903–07 (D.Md.1980); *Rollins v. Proctor & Schwartz*, 478 F.Supp. 1137, 1143–47 (D.S.C. 1979), *rev'd on other grounds*, 634 F.2d 738 (4th Cir. 1980); *Roorda v. Volkswagenwerk, A. G.*, 481 F.Supp. 868, 875–79 (D.S.C.1979); *Fieldcrest Mills, Inc. v. Mohasco Corp.*, 442 F.Supp. 424, 428–31 (M.D.N.C.1977).

*See generally Harris v. Arlen Properties, Inc.*, 256 Md. 185 [260 A.2d 22] (1969); *Vitro Elec-*

**144**

### B. Subsection (b)(2)

Hampton's contacts with Maryland also bring it within the reach of subsection (b)(2). Accordingly, the court holds that subsection (b)(2) is an alternative basis on which to exercise personal jurisdiction over Hampton. The court's reasoning is set out below.

As originally enacted by the Maryland legislature, what is now subsection (b)(2) applied only to "contracting to supply services" in Maryland. *Md.Code Ann.* art. 75, § 96(a)(2) (1965 Supp.). That version differed from section 1.03(a)(2) of the Uniform Act, which afforded jurisdiction respecting contracts "to supply services or things" in the state. 9B U.L.A. 310 (1966 ed.). *See Beaty v. M. S. Steel Co.*, 401 F.2d at 160. This divergence from the Uniform Act was criticized by Professor Auerbach on the following ground:

> "The thought may have been that in the case of services, which would presumably be performed in the state by the defendant or his agents, there is a closer contact with the state than the shipment of merchandise into the state through a carrier. *But it is not the services which are the basis for jurisdiction, but the 'contracting to supply services'.* Jurisdiction for defective services performed in the state can rest on subsection (1) or (3). *Since it is the contractual relationship which is the basis for jurisdiction, there is no logical distinction between services and things."*

26 *Md.L.Rev.* at 38 (emphasis supplied). The present version, derived from *Md.Code Ann.* art. 75, § 96(a)(2) (1973), has enlarged the relevant categories of contracts, and is now applicable to "[c]ontracts to supply goods, food, services, or manufactured products in the State." *Md.Cts. & Jud.Proc. Code Ann.* § 6–103(b)(2).

It is undisputed that Hampton has entered into contracts with Maryland customers regarding the supplying of manufactured products. Hampton admits that it regularly enters into contracts for the sale of clothing with Maryland customers whose purchase orders are solicited by the plaintiffs. Hampton contends, however, that under these contracts they do not supply manufactured products *in* Maryland because the delivery term of the contract is either F.O.B. North Carolina, or F.O.B. Virginia. For this proposition Hampton relies on Judge Young's decision in *Holfield v. Power Chemical Co., Inc.*, 382 F.Supp. 388 (D.Md.1974). Hampton next asserts that since the contracts involved were not entered into between itself and the plaintiffs, the claims sued on in this case do not arise out of the contracts as required by subsection (a). Finally, Hampton asserts that even if its conduct falls within the reach of subsection (b)(2), the exercise of personal jurisdiction over it would violate the Due Process Clause under the Fourth Circuit's decision in *Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc.*, 239 F.2d 502 (4th Cir. 1956).

 Hampton's first argument is flawed in several aspects. First, as Professor Auerbach has noted, the basis of jurisdiction under subsection (b)(2) is the "contracting to supply" goods or services, not the acts of the nonresident in the state. 26 *Md.L.Rev.* at 38. Second, even assuming that jurisdiction under subsection (b)(2) is somehow contingent upon the delivery provisions of the Uniform Commercial Code, under that statute, where the delivery term is F.O.B. place of shipment, the seller must: (1) contract with a carrier to deliver the goods to the buyer; (2) bear the risk and expense of putting the goods into the hands of the carrier; and (3) deliver to the buyer the documents necessary to obtain possession of the goods from the carrier. *See Md.Comm.Law Code Ann.* §§ 2–319, 2–504 (1975). Consequently, Hampton's contracts with Maryland customers require Hampton to arrange for and cause the physical delivery of the goods into Maryland.

---

*tronics v. Milgray Electronics, Inc.*, 255 Md. 498 [258 A.2d 749] (1969). *See also Puerto Rico Maritime Shipping Authority v. Almogy*, 510

F.Supp. 873 (S.D.N.Y.1981); *Bulova Watch Co. v. K. Hattori & Co., Ltd.*, 508 F.Supp. 1322 (S.D.N.Y.1981).

As Professor Auerbach has noted, subsection (b)(2) "authorizes jurisdiction over a defendant who has never been in the state." 26 *Md.L.Rev.* at 36. Thus, unlike the possible limitation on jurisdiction under subsection (b)(1), *see Mohamed v. Michael*, 279 Md. at 658–59, 370 A.2d 551 (1977), neither the nonresident nor its agents must ever have been physically present in Maryland for jurisdiction to exist under subsection (b)(2). Consequently, whether the carrier of the goods is the agent of the nonresident or an independent contractor is irrelevant in the context of subsection (b)(2). "In both situations the defendant has purposefully, to obtain a profit, entered into a transaction having the same substantial effects within the state." 26 *Md.L.Rev.* at 38.

Hampton's reliance on *Holfield* and *Erlanger Mills*, is misplaced. Although it is true that in *Holfield* the nonresident shipped goods directly to its Maryland distributor, 382 F.Supp. at 392, nowhere in his opinion does Judge Young indicate that in order to exercise jurisdiction under subsection (b)(2) the seller must personally, or through its own agent, deliver the goods to Maryland.

The Fourth Circuit's decision in *Erlanger Mills* is also inapposite. In that case the long arm provision in question provided:

" 'Jurisdiction over foreign corporations not transacting business in this State—(a) Every foreign corporation shall be subject to suit in this State, by a resident of this State or by a person having a usual place of business in this State, whether or not such foreign corporation is transacting or has transacted business in this State and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:

" '(3) Out of the production, manufacture, or distribution of goods by such corporation with the *reasonable expectation that those goods are to be used or consumed in this State and are so used and consumed*, regardless of how or where the goods were produced, manufactured, marketed, or sold or whether or not through the medium of independent

contractors or dealers.' (Italics supplied.)"

239 F.2d at 504.

The resident North Carolina plaintiff had ordered the goods from the nonresident defendant after a visit by the plaintiff to the defendant's plant in New York. The goods were sold F.O.B., New York. The defendant had never before done business with a North Carolina company. The Fourth Circuit found the statute *constitutionally* infirm on the ground that *International Shoe* does not "sustain jurisdiction in the North Carolina courts, *where the only contact has been a single interstate shipment into North Carolina.*" 239 F.2d at 507. (emphasis supplied).

In the instant case, it is undisputed that Hampton entered into numerous contracts with Maryland customers for the sale of its clothing products. Further, these products were delivered to the customers in Maryland by common carrier, and Hampton derived substantial revenues from these sales. Accordingly, the court concludes that Hampton's conduct falls within subsection (b)(2).

*C. Subsection (a)*

Hampton next contends that jurisdiction cannot be based on subsection (b)(1) or (b)(2) for the reason that the plaintiffs' claims do not arise out of Hampton's contracts with the purchasers of Hampton's products. This objection is wholly without merit. Subsection (a) provides:

"If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section."

In *Malinow v. Eberly*, 322 F.Supp. 594 (D.Md.1971), this court commented on *Md. Code Ann.* art. 75, § 96(b), which is virtually identical to the present subsection (a), as follows:

"As previously pointed out, the Maryland 'Long Arm' statute is based upon the Uniform Interstate and International Procedure Act. The Commissioner's note states at 9B Uniform Laws Annotated 313 in reference to the Uniform Act counterpart to § 96(b):

'The concept of cause of action * * * should be broadly construed to cover an entire transaction so that, when possible, the entire dispute may be settled in a single litigation. Subdivision (b) is designed to prevent assertion of independent claims *unrelated to any activity described* in subdivision (a) of § 1.03.' (Emphasis supplied.)
*The drafters of the forebear of the Maryland statute logically would not view the precursor of § 96(b) as requiring that all elements of a cause of action arise in the forum state, but, in harmony with the concept expressed in the above note, would probably state that § 96(b) merely prevents the assertion of claims in the forum state that do not bear some relationship to the acts in the forum state relied upon to confer jurisdiction.* The conclusion comports with the reasoning of the Supreme Court in the cases which established the jurisdictional limits which the Uniform Act sought to fill."

322 F.Supp. at 599 (emphasis supplied). *Accord, Du-Al Corp. v. Rudolph Beaver, Inc.,* 540 F.2d at 1233; *Egeria Societa di Navigazione Per Azioni. v. Orinoco Mining Co.,* 360 F.Supp. 997, 1004–05 (D.Md.1973); *Cohane v. Arpeja-California, Inc.,* 385 A.2d at 158–59; *Geelhoed v. Jensen,* 277 Md. at 232–33 n. 6, 352 A.2d 818.

█ Although the court's comments in *Malinow* were in the context of an action under subsection (b)(1), they are fully applicable to an action where jurisdiction is based on subsection (b)(2). In this case, the plaintiffs' breach of contract claim is founded upon Hampton's alleged failure to pay commissions earned by virtue of Hampton's contracts with Maryland customers, as well as customers in other states. In addition, the plaintiffs allege that Hampton has breached its delivery obligations, under the agreement with the plaintiffs, regarding the shipment of goods to those customers, thereby injuring the plaintiffs' goodwill. It cannot be doubted, therefore, that significant elements of the plaintiffs' claim arise out of Hampton's contacts with Maryland. Accordingly, the court may exercise personal jurisdiction over Hampton with respect to the plaintiffs' entire claim. *See, e. g., Malinow v. Eberly,* 322 F.Supp. at 599; *Cohane v. Arpeja-California, Inc.,* 385 A.2d at 158–59.

### D. Due Process

█ It remains to be determined whether the exercise of personal jurisdiction over Hampton, pursuant to either subsection (b)(1) or (b)(2), comports with Due Process. In conducting this inquiry, the court must focus upon "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977).

█ It is plain that Hampton's contacts with Maryland are neither isolated nor fortuitous, *see Rush v. Savchuk,* 444 U.S. 320, 328–29, 100 S.Ct. 571, 577–578, 62 L.Ed.2d 516 (1980), and that Hampton derives substantial and direct economic benefits from its contracts with Maryland customers. In *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Court commented that:

"The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State. *Compare Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961)."

444 U.S. at 297–98, 100 S.Ct. at 567.1.[12] *See Hardy v. Pioneer Parachute Co., Inc.,* 531 F.2d at 195.

In this case, Hampton had more than an "expectation" that its products would enter Maryland. Hampton purposefully engaged the plaintiffs to solicit purchase orders for its products from Maryland customers, entered into sales contracts with those customers based on the purchase orders, caused

---

**12.** According to Professor Auerbach, *"Gray v. American Radiator & Sanitary Corp.* is authority for the validity" of subsection (b)(2). 26 *Md.L.Rev.* at 37 (footnote omitted).

the products to be delivered to the customers in Maryland and derived substantial economic benefit from those sales. It is apparent, therefore, that Hampton has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1240. In sum, the court cannot say that the maintenance of this suit offends "traditional notions of fair play and substantial justice," *International Shoe Co. v. Washington*, 326 U.S. at 316, 66 S.Ct. at 158, *quoting, Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940), because Hampton's "conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court" in Maryland. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297, 100 S.Ct. at 567.

### III. Venue

■ Hampton's motion to dismiss for improper venue is without merit. Subject matter jurisdiction in this case is founded solely upon diversity of citizenship. 28 U.S.C. § 1332(a). Consequently, venue is to be determined under 28 U.S.C. § 1391(a). Under that section, venue is proper: (1) where all the plaintiffs reside; or (2) where all the defendants reside; or (3) where the claim arose. Both of the plaintiffs reside in Maryland. Accordingly, venue is proper in this District, notwithstanding that the defendant may not "reside" in this District within the meaning of 28 U.S.C. § 1391(c). *See, e. g., Galaxy International, Inc. v. White Stores, Inc.*, 88 F.R.D. 311, 314 (W.D. Pa.1980); *Campbell v. Triangle Corp.*, 336 F.Supp. 1002, 1007–08 (E.D.Pa.1972); *Color Technique, Inc. v. Don Wallace, Inc.*, 241 F.Supp. 952, 953 (N.D.Ill.1965); 1 *Moore's Federal Practice* ¶ 0.142[5.–1–3] at 1413–14 (2d ed. 1980); 15 C. Wright & A. Miller, *Federal Practice and Procedure* § 3811 at 57 (1976). *Cf. Stephenson v. Johnson Volkswagen, Inc.*, 428 F.Supp. at 198 (where venue is to be determined under § 1391(b), a corporation may be sued in the district where the claim arose even if it were not doing business there under § 1391(c)).

Since the court has concluded that personal jurisdiction may be exercised over Hampton pursuant to subsection (b)(1) and (b)(2), and the plaintiffs would be just as inconvenienced by a transfer to North Carolina as the defendant is inconvenienced by a trial in Maryland, *Quinn v. Bowmar Publishing Co.*, 445 F.Supp. 780, 787–88 (D.Md. 1978), Hampton's motion for a transfer of venue under 28 U.S.C. § 1404(a) will be denied.

For the reasons set out above, it is this 31st day of July, 1981, ORDERED:

1. Hampton's motions to dismiss for lack of personal jurisdiction and improper for venue are DENIED.

2. Hampton's motion for transfer is DENIED.